

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 18, 2022

**BY ECF**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   *United States v. Anastasios Verteouris*,
>          S1 20 Cr. 79 (RMB)

Dear Judge Berman:

The defendant, Anastasios Verteouris, in the above-captioned matter is scheduled to be sentenced on August 9, 2022. The Government respectfully submits this letter in connection with that sentencing and in response to the defendant's letter, dated July 11, 2022 ("Def. Ltr."). For the reasons that follow, the Government recommends that the Court impose a custodial sentence at the bottom of the stipulated Guidelines range of 30 to 37 months' imprisonment.

**I.     Offense Conduct**

The defendant participated in an opioid diversion scheme. At the center of that scheme was Dr. Joseph Olivieri.

Olivieri practiced medicine in Manhattan and participated in a years-long scheme to divert oxycodone and other controlled substances for illicit use. (PSR ¶ 10). Olivieri was one of the top fifteen prescribers of opioids in New York State during much of the scheme. (PSR ¶ 10). He prescribed more than 250,000 pills of controlled substances, including highly addictive opioids such as oxycodone, oxymorphone, and morphine sulfate to individuals he knew did not have a legitimate medical need for them. (PSR ¶ 10). Olivieri was paid cash for those prescriptions, often by other individuals, who arranged with Olivieri for individuals posing as "patients" to obtain the prescriptions from Olivieri. (PSR ¶ 10). Coconspirators then collected the prescription pills for their unlawful resale. (PSR ¶ 10). During the course of the scheme, Olivieri deposited into his bank accounts more than one million dollars in cash. (PSR ¶ 10).

Many of the individuals who received medically unnecessary prescriptions from Olivieri were directed to do so by crew chiefs. (PSR ¶ 11). The crew chiefs would collect from the putative "patients" at least some of the prescribed substances, including for their unlawful resale. (PSR

Honorable Richard M. Berman
United States District Judge
July 18, 2022
Page 2

¶ 11).  The crew chiefs included, among others, Matthew Brady, Kristopher Taglianetti, Leo Hernandez, and the defendant.  (*See* PSR ¶ 11).

From 2014 into 2018, the defendant directed others to obtain medically unnecessary prescriptions from Olivieri so that he could collect some of those prescription medications for his own personal use.  (PSR ¶ 12).  The defendant also resold some of the medications he received.  (PSR ¶ 12).

## II.  Procedural History

In January 2021, the defendant was charged in Superseding Indictment S1 20 Cr. 79 (RMB) (the "Indictment") with one count.  (*See* PSR ¶ 1).  On March 22, 2022, the defendant pled guilty to Count One of the Indictment pursuant to a written plea agreement.  (PSR ¶ 3).  Count One of the Indictment charged the defendant with violating 21 U.S.C. § 846, by participating in a conspiracy to distribute and possess with intent to distribute controlled substances outside the scope of professional practice and not for a legitimate medical purpose, namely, mixtures and substances containing detectable amounts of oxycodone, oxymorphone, morphine sulfate, and amphetamine, each a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (PSR ¶ 1).  In the plea agreement, the parties stipulated, consistent with the United States Probation Office's calculations, that the applicable offense level is 19; that the defendant is in Criminal History Category I; and that his advisory Sentencing Guidelines range is accordingly 30 to 37 months' imprisonment.  (PSR ¶¶ 4, 30, 33, 64).

## III.  Status of Coconspirators

Olivieri, Brady, Taglianetti, and Hernandez, among others, were charged and pled guilty in connection with the diversion scheme.  Olivieri was sentenced by Judge Crotty to 40 months' imprisonment.  (PSR ¶ 6).  Brady was sentenced by Judge Crotty to 36 months' imprisonment.  18 Cr. 316 (PAC) Dkt. 90.  Taglianetti is due to be sentenced by Judge Crotty.  18 Cr. 316 (PAC) Minute Entry July 6, 2021.  Hernandez is due to be sentenced by this Court.  (PSR ¶ 5).

## IV.  Discussion

The Section 3553(a) factors militate in favor of a custodial sentence at the bottom of the Guidelines range of 30 to 37 months' imprisonment.

*First*, the nature and seriousness of the offense warrant a term of imprisonment.  *See* 18 U.S.C. §§ 3553(a)(1), (2)(A).  Our country faces a large, and growing, prescription drug abuse crisis.  According to the Centers for Disease Control and Prevention, "[o]verdose deaths involving prescription opioids nearly increased by five times from 1999 to 2020." https://www.cdc.gov/drugoverdose/data/prescribing/overview.html (last visited July 13, 2022).  Indeed, "[f]rom 1999-2019, nearly 500,000 people died from an overdose involving any opioid, including prescription and illicit opioids." https://www.cdc.gov/drugoverdose/epidemic/index.html (last visited July 13, 2022).

Honorable Richard M. Berman
United States District Judge
July 18, 2022
Page 3

The defendant contributed to this public health crisis.  As Probation put it in the context of analyzing "just punishment," "[t]he defendant voluntarily engaged in the instant offense, [and] maintained a leadership role within the offense."  (PSR at p. 21).  He recruited other putative "patients" into the scheme so he could obtain their medically unnecessary pills.

*Second*, the circumstances of the offense and the need for the sentence imposed to promote respect for the law warrant a custodial sentence.  *See* 18 U.S.C. §§ 3553(a)(1), (2)(A).  The defendant did not commit his crime alone, hesitantly, or fleetingly.  He did so for years, in substantial amounts, and involved others.

*Finally*, the need for general deterrence strongly weighs in favor of an incarceratory sentence.  *See* 18 U.S.C. § 3553(a)(2)(B).  It is challenging to successfully investigate and prosecute schemes involving doctors, where much of the conduct takes place behind closed doors or is cloaked in an alleged doctor-patient relationship.  This means that when such a scheme is uncovered, and a key individual—such as the defendant, who served as a crew chief—is successfully prosecuted and convicted, a substantial sentence is warranted.  *See, e.g.*, *United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.").

The Government recognizes that mitigating circumstances, including the defendant's addiction, and the need to avoid unwarranted disparities counsel in favor of a bottom-of-the-Guidelines sentence here.  But those same mitigating points do not justify the non-custodial sentence that the defense requests.  The defense misstates the facts when they claim that the defendant "did not resell a single pill on the street." (Def. Ltr. at 10).  In the defendant's own plea allocution, he admitted that "on some occasions in order to fund this constant and expensive addiction, I would trade, either barter or sell, some of the prescriptions I received in excess." (March 22, 2022 Transcript at 24).  More generally, there is reason to doubt the defense's self-serving narrative in which the sole motivation behind the defendant's criminality was his addiction.  People who are addicted to prescription opioids and who think they need more pills than what their doctor prescribes typically purchase additional pills on the black market.  The defendant did not do that.  Instead, he took the more laborious and riskier step of recruiting individuals to see Olivieri and to obtain from him medically unnecessary pills.  That conduct deserves punishment.

Honorable Richard M. Berman
United States District Judge
July 18, 2022
Page 4

### V.     Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a custodial sentence at the bottom of the Guidelines range of 30 to 37 months' imprisonment, a sentence that would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   s/ Tara M. La Morte
Tara M. La Morte
Robert B. Sobelman
Samuel P. Rothschild
Assistant United States Attorneys
(212) 637-1041/2616/2504

cc:  Arthur L. Aidala, Esq. (by ECF)